CULPEPPER, Judge.
This damage suit arises out of a head-on collision between plaintiff’s Corvair automobile and a 1954 Chevrolet insured *246 by defendant and driven by Conrad Slate, who died as a result of injuries received in the crash. After trial on the merits, the district judge held in favor of the plaintiff and the intervenor. Defendant appealed. Plaintiff answered the appeal contending that the lower court’s judgment should be amended so as to allow an expert witness fee of $100 to Mr. Alvin Doyle, Jr., who testified as an expert in accident analysis.
The first issue, of which we must dispose, is the admissibility in evidence of the deposition upon written interrogatories of defendant’s witness, Dan E. Rife, a member of the U. S. Navy. Rife was one of three hitchhiking sailors who were standing on the side of the highway, SO or 60 feet from the point where the collision occurred. His deposition was taken before a United States Naval officer, aboard his ship. At the outset of the trial, plaintiff moved to suppress the deposition and delete it from the record on two grounds: First, that the Naval officer taking the deposition did not attach to it “the copy of the notice and the interrogatories received by him” in compliance with LSA-C.C.P. Art. 1472. The first paragraph of the deposition states that it is taken in accordance with the order of court in this case and that “answers herein correspond to question numbers in the above document.” The interrogatories are not actually attached to the deposition which was mailed by the Naval officer to the clerk of court, but a copy of the interrogatories does appear in the record. Plaintiff’s second grounds for suppression of the deposition is that the officer before whom the deposition was taken did not personally seal it in an envelope and mail it to the clerk of court as required by LSA-C.C.P. Art. 1456. The deposition was taken before a Lt. Underhill, but the letter of transmittal mailed to the clerk of court is signed by Lt. Commander Dietrich, Commanding Officer of the ship.
Defendant contends, and we think correctly, that under the facts of this case plaintiff has waived his objections, under the provisions of LSA-C.C.P. Art. 1427 which reads as follows:
“Objections as to completion and return of deposition
“Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared,, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Articles 1451 through 1473 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.”
The record shows that on March 7, 1962r plaintiff received notice of defendant’s intention to take the deposition by written interrogatories, but plaintiff did not choose to serve cross-interrogatories. LSA-C.C. P. Art. 1471. The deposition was taken on March 24, 1962. Plaintiff admits that on about April 1, 1962 he received notice from defendant that the deposition had been filed with the clerk. LSA-C.C.P. Art. 1472. After filing, the deposition was available for inspection by anyone under the provisions of LSA-C.C.P. Art. 1456. Actually, the record shows that on April 6, 1962 defendant’s counsel wrote a letter to plaintiff’s attorney suggesting that if he wanted to see the deposition he could ask for the record. This case was tried on May 2, 1962. Plaintiff’s counsel states that a few minutes before the trial started he examined the record and for the first time noted the irregularities in the deposition of which he complains and at that time made an oral motion to suppress the deposition.
Under these facts, it is our opinion that plaintiff has waived the objections to the deposition because he did not file a motion to suppress “with reasonable promptness after such defect is, or with due diligence might have been, ascertained.” LSA-C.C.P. Art. 1427. The purpose of this article, which is taken from Federal Rule 32, is to render technical objections, based *247 on errors and irregularities in depositions, unavailable at the trial, so as to prevent undue delay of the proceedings. Moore’s Fed.Prac. 1951 Ed. Vol. 4, page 2202-2203, Sec. 32.02; Vol. 2A Barron & Holtzoff, Federal Practice and Procedure, 1961 Ed., page 275, Sec. 754; Leon D. Hubert, Jr., The New Louisiana Statute on Depositions and Discovery, 13 La.Law Review, 181— 183. Plaintiff had almost a month before the trial within which to examine the deposition and move to suppress it. His failure to do so constitutes a waiver of these purely technical objections as to form, under the clear language and intent of LSA-C.C.P. Art. 1427. We, like the trial judge, have considered the deposition as part of the evidence.
Turning now to the merits, the issues are factual. The accident occurred after dark at about 6:25 p. m. on February 1, 1961. The weather was dry. The scene of the accident is just north of Oakdale, Louisiana on U. S. Highway 165, which runs north to Alexandria. The vehicles collided head-on, right front to right front, in the north bound lane of traffic. Strangely enough, the substantial issue is which automobile was proceeding north, and therefore in its own proper lane of traffic at the time of the collision.
Defendant argues forcefully that the trial judge committed manifest error in finding that defendant’s two eye-witnesses to the accident, Dan E. Rife and Eddie Douglas, were unworthy of belief. In a written opinion, the district judge stated frankly that he found the accident occurred according to the version given by the plaintiff, Dr. Lacour, and that he did not believe the defendant’s witnesses. The issue for this court is to determine whether the district judge was manifestly erroneous. It is a close question, requiring a discussion of the evidence.
Dr. Lacour testified that on the day of the accident he made professional house calls until some time between 5 and 6 o’clock p. m.; that he then went home to bathe and shave in preparation for Bishop Greco’s reception for the staff of St. Francis Cabrini Hospital, being given at 7:30 p. m. at Maryhill Seminary near Alexandria, Louisiana; that he left home between 6:00 and 6:30 p. m. and was driving in a northerly direction toward Alexandria, at a speed of 30 to 35 miles per hour, when he saw the automobile of defendant’s insured coming south cross over into the north bound lane, as if going to the east shoulder of the highway; that on realizing defendant’s insured was not going to the east shoulder, he tried to cut his automobile to the left at the last moment but defendant’s insured cut to the right and the two vehicles collided right front to right front in the north bound lane of traffic.
Plaintiff’s witnesses, Mrs. A. E. Lee and Don Allen, corroborated his testimony by stating that he made professional calls to their respective homes at about 5:00 p. m. on the day of the accident.
Dr. Lacour’s wife corroborated his testimony that he left home between 6:00 and 6:30 p. m. to attend the reception. Dr. Lee Jarrell of Alexandria, Louisiana, testified that he had planned to meet Dr. Lacour in Alexandria to go to the reception. Certainly, the evidence is conclusive that Dr. Lacour had planned to go north to Alexandria to the reception and that he left Oakdale at an hour consistent with the time required to make the trip.
Plaintiff also introduced in evidence the testimony of Mr. Alvin Doyle, Jr., who qualified as an expert on accident analysis. Doyle based his opinion on the following: the known fact that the vehicles collided right front to right front in the north bound lane of traffic; the assumed fact that the vehicles were both traveling at a speed of about 30 miles per hour (an assumption based on the extent of damage to the vehicles); the known fact that after the accident plaintiff’s vehicle came to rest a few feet from the point of impact, in the center of the highway, facing east, whereas the defendant’s insured vehicle came to rest *248 a few feet from the point of impact, facing west, and with its front end approximately on the east side of the paved portion of the highway and just a few feet north of plaintiff’s vehicle. Mr. Doyle was of the opinion that Lacour was going north and Slate south and as the vehicles struck, right front to right front, each pivoted to the left approximately 90 degrees and came to rest. Doyle stated that this is consistent with the law of physics that an object in motion tends to continue in the same direction and resists anything seeking to change that direction. He opined that it would be completely contrary to this law of physics and to the way vehicles move after colliding to assume that plaintiff was going south and Slate north, because this assumption would require that each vehicle pivot 270 degrees around the point of impact. Doyle pointed out that in order to pivot 270 degrees the vehicles would have had to reverse directions and almost make a full circle. In our opinion, these assumptions and conclusions appear logical.
Mr. R. O. Butler and Mr. Dan Maride testified for the plaintiff that late in the afternoon of the day of the accident, Slate was in Maricle’s bar drinking whisky and that he was intoxicated. Maride, owner of the bar, also stated that about 6:15 p. m. Slate left the bar for the purpose of going to the radio station in Oakdale to pick up radio announcers and equipment for a live broadcast which was to be given from the bar that night. Slate was employed by the radio station. Maride stated positively that about ten minutes after Slate left the bar, headed toward Oakdale, Maride received word of the collision. The distance from the bar to the scene of the collision was measured at %oths of a mile, by Mr. Doyle. This evidence, of course, tends to show that at the time of the collision Slate was going south on his way from Maricle’s bar to Oakdale. Also, Slate’s intoxication would explain his getting on the wrong side of the road.
Now considering defendant’s evidence, they produced two alleged eyewitnesses to the accident. The first is Dan E. Rife, one of three hitchhiking sailors who were standing on the east side of the highway 50 or 60 feet south of the point of impact. In Rife’s deposition, he described the accident as follows: “We were hitchhiking and saw a 1954 Chevrolet coming toward us from Oakdale. As he passed we turned to see if he was going to stop. The Corvair came over a little hill and they met head-on. The Corvair was on the wrong side of the road.”
Defendant’s other alleged eyewitness is Eddie Douglas, a plumber who lives in Oak-dale. Douglas testified that he was driving north intending to go to Welch’s Service Station to pick up some oil and that he saw Dr. Lacour’s “little car” stopped in front of the Barham house (located on the west side of the highway at the scene of the collision); then the Chevrolet, going north, passed Douglas “and just the pop of your finger that (little) car just pulled right out in the middle of the road and this other one plowed right into it.” Douglas stated that he saw several people run to the scene and he didn’t want to become involved so he left immediately. It was some time before he told anyone he had seen the collision.
Defendant also called as witnesses, Elvin Welch and Lonnie Welch, who were in their service station located just north of the Barham house, on the west side of the highway. Lonnie Welch testified that he was seated in the door of the station, with his back toward the south; that he could see the highway to the north and no vehicles passed his station from either the north or the south for 15 or 20 minutes before the accident. Elvin Welch, whose testimony was taken by deposition after the trial, testified that he was standing in the station and that just before the crash he saw and recognized Dr. Lacour drive his white Cor-vair from the south into the driveway of the Barham house. Elvin stated that he first thought, from the lights of the Corvair, that it was coming into the station but when he saw that it was not, he went back inside. Immediately after that he heard the crash.
*249 An apparent discrepancy between the testimony of Rife and that of Douglas and the Welches is that Rife testified he saw the Lacour vehicle “come over a little hill”. Pictures filed in evidence show that the only “little hill” is a slight dip in the highway a short distance north of Welches’ station. On the other hand, Douglas testified that the Lacour vehicle was parked off the highway in front of the Barham house and came out onto the highway from that position. As stated above, the Welches corroborated Douglas, who incidentally is a brother-in-law of Elvin Welch.
Regarding the testimony of Eddie Douglas the trial judge stated: “His testimony was impeached by several witnesses to the effect that he had made prior contradictory statements as to how the accident occurred. This witness, from his behavior and demeanor on the stand, leaves doubt as to the value of his testimony.” One witness to a prior contradictory statement was Mrs. Lacour, wife of the plaintiff, who testified that Douglas made a prior contradictory statement to her that he was parked in his truck at Welches’ station and that the La-cour vehicle was going north at the time of the accident. Also, Mr. Wilkinson, an insurance adjuster, testified as to a prior contradictory statement by Douglas that he was driving north just before the crash, heard a speeding vehicle approaching from his rear and had to pull off the highway to let it pass.
Mr. Alva Barham testified that on the evening in question he was at home watching television and that he could have, but did not hear any vehicle on the gravel in front of his home. This tends to discredit Eddie Douglas’s testimony, as well as the Welches’.
Although this case is not without difficulty, we have reached the conclusion we are unable to say the trial judge was manifestly erroneous in discrediting the testimony of defendant’s witnesses and accepting Dr. La-cour’s version of the accident. Plaintiff’s evidence is logical and consistent whereas defendant s evidence is inconsistent. By impeachment, plaintiff has cast considerable doubt on defendant’s witnesses. On the other hand, defendant failed completely to discredit Dr. Lacour by showing that he was intoxicated or that he was going to the Barham house to see a former employee.
By answer to the appeal, plaintiff contends the trial judge should have allowed an expert witness fee of $100 to Mr. Alvin Doyle, Jr. We think the record shows clearly that Mr. Doyle qualified as an expert in accident analysis and that he gave expert opinions in this field. Therefore, he is entitled to a reasonable fee of $100.
For the reasons assigned the judgment appealed is amended so as to allow an expert witness fee of $100 to Mr. Alvin Doyle, Jr., this amount to be taxed as a cost of court. Otherwise than as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the defendant.
Amended and affirmed.